**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 2 8 2017

JAMES W. McCORMACK CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

PAULA BRITTAIN;
JENNIFER JOHNSTON; and
KIMBERLY WARD                                                    **PLAINTIFFS**

vs.                              CASE NO. 4.17 cv417-JM

                    This case assigned to District Judge Moody
JEFFERY EVERETTS;
CS BACKGROUND, INC.; and and to Magistrate Judge Harris
THE CITY OF BEEBE, ARKANSAS                                      **DEFENDANTS**

---

### COMPLAINT

---

COME now the Plaintiffs, by and through their attorneys, TAYLOR & TAYLOR LAW FIRM,

P.A., and for their Complaint do state:

### PARTIES

1.      Plaintiff Paula Brittain is an individual who is currently, and was at all relevant

times, a resident of Beebe, White County, Arkansas

2.      Plaintiff Jennifer Johnston is an individual who is currently, and was at all relevant

times, a resident of Beebe, White County, Arkansas.

3.      Plaintiff Kimberly Ward is an individual who is currently, and was at all relevant

times, a resident of Beebe, White County, Arkansas.

4.      Upon information and belief, Defendant Jeffery Everetts is an individual who is

currently, and was at all relevant times, a resident of Batesville, Independence County, Arkansas.

5.      Upon information and belief, Defendant CS Background, Inc. is an Arkansas

corporation with its principal place of business in Judsonia, White County, Arkansas.

6.      Defendant The City of Beebe, Arkansas is a municipality located in White County,

Arkansas.

## JURISDICTION

7.     This Court has jurisdiction over the Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331.

8.     This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1)–(2) and 28 U.S.C. § 83(a)(2).

## FACTS

### *Introduction*

10.    Upon information and belief, The City of Beebe contracted with CS Background, Inc. to provide probation services.

11.    At all times relevant to this lawsuit, Defendant Jeffery Everetts was an employee of CS Background, Inc.

12.    At all times relevant to this lawsuit, Defendant Jeffery Everetts was an officer of CS Background, Inc.

13.    In fact, as of the date of the filing of this Complaint, Defendant Jefferey Everetts is still listed as the registered agent, incorporator/organizer, and president of CS Background, Inc.

14.    Upon information and belief, at all times relevant to this lawsuit, Defendant Jeffery Everetts was an owner of CS Background, Inc.

15.    The Plaintiffs in this case are all females who were sentenced to probation and to whom Defendant Jeffery Everetts was appointed as their probation officer.

16.    At different times, Defendant Jeffery Everetts sexually harassed each and every one of the Plaintiffs.

17.     The Plaintiffs lived in fear of retaliation if they either rebuffed Defendant Jeffery Everetts's advances or if they reported Jefferey Everetts's conduct.

18.     Nevertheless, at least two people reported Jefferey Everetts's conduct to officials with the City of Beebe.

19.     Specifically, and as alleged below, Plaintiff Jennifer Johnston informed Officer Bryan Hightower of Defendant Jefferey Everetts's conduct.

20.     Additionally, Crissie Norman (a non-party who has since deceased) informed the Beebe Police Chief that Defendant Jefferey Everetts was dating another probationer (also a non-party), and the Beebe Police Chief replied that Defendant Everetts was "just trying to get some head." (Or words to that effect.)

### *Jennifer Johnston*

21.     In the Summer of 2015, Plaintiff Jennifer Johnston received a speeding ticket.

22.     Plaintiff Jennifer Johnston forgot to appear for her court date, and was charged with failure to appear.

23.     When Plaintiff Jennifer Johnston did appear, she was put on probation.

24.     Plaintiff Jennifer Johnston was assigned to probation officer Jeffery Everetts.

25.     During this time, Plaintiff Jennifer Johnston was going through a divorce.

26.     During this time, Plaintiff Jennifer Johnston received another speeding ticket and eventually lost her driver's license.

27.     At some point during this time, Defendant Jeffery Everetts showed up at Plaintiff Jennifer Johnston's house and conducted a drug test.

28.     Defendant Jeffery Everetts informed Plaintiff Jennifer Johnston that she had passed her drug test, and gave her a hug.

29.     Plaintiff Jennifer Johnston was seeing a Ben Rainey at the time.

30.     Mr. Rainey beat Plaintiff Jennifer Johnston and broke Plaintiff Jennifer Johnston's jaw.

31.     Mr. Rainey also caused Plaintiff Jennifer Johnston to be charged with shoplifting.

32.     Plaintiff Jennifer Johnston called Defendant Jeffery Everetts to inform him of these developments.

33.     Defendant Jeffery Everetts instructed Plaintiff Jennifer Johnston to go to the city hall for The City of Beebe, Arkansas and meet him in the judge's chambers.

34.     Plaintiff Jennifer Johnston drove with her son and a third party to city hall.

35.     During the meeting, Plaintiff Jennifer Johnston's son remained in the vehicle with the third party.

36.     Plaintiff Jennifer Johnston met alone with Defendant Jeffery Everetts in the judge's chambers.

37.     Defendant Jeffery Everetts instructed Plaintiff Jennifer Johnston that he would not penalize her for her alleged probation violations.

38.     Defendant Jeffery Everetts then asked if Plaintiff Jennifer Johnston's "boobs" were real.

39.     Plaintiff Jennifer Johnston pretended she had misunderstood Defendant Jeffery Everetts, and replied, "Yeah, my rings are real." (Or words to that effect.)

40.     Defendant Jeffery Everetts then said, "That's not what I'm asking.  Are your titties real?" (Or words to that effect).

41.     Defendant Jeffery Everetts then noticed that Plaintiff Jennifer Johnston's son and the third party were in the vehicle outside, and told Plaintiff Jennifer Johnston that she needed to get rid of them.

42.     When Plaintiff Jennifer Johnston stood up to leave, Defendant Jeffery Everetts hugged Plaintiff Jennifer Johnston and ran his hand down Plaintiff Jennifer Johnston's side.

43.     Plaintiff Jennifer Johnston rebuffed this advance.

44.     One week later, Defendant Jeffery Everetts appeared at Plaintiff Jennifer Johnston's house with Officer Bryan Hightower of the Beebe Police Department.

45.     Upon information and belief, this search was in retaliation for Plaintiff Jennifer Johnston's rebuffing of Defendant Jeffery Everetts's sexual advances.

46.     During the search, Plaintiff Jennifer Johnston informed Officer Bryan Hightower that Defendant Jeffery Everetts had been asking about Plaintiff Jennifer Johnston's breasts.

47.     During this search, a marijuana pipe was allegedly discovered.

48.     At this point, the Arkansas Department of Human Services took Plaintiff Jennifer Johnston's three children into custody.

49.     As a result of the retaliatory search, Plaintiff Jennifer Johnston was incarcerated for approximately two months.

50.     As a further result of the retaliatory search, Plaintiff Jennifer Johnston's children were taken away from her for approximately eight months.

### *Paula Brittain*

51.     In October of 2015, Plaintiff Paula Brittain was arrested.

52.     Plaintiff Paula Brittain's trial date was in February 2016.

53.     Plaintiff Paula Brittain was put on probation.

54.     Plaintiff Paula Brittain was assigned to probation officer Jeffery Everetts.

55.     During the time that Plaintiff Paula Brittain was on probation, she was sexually harassed in numerous ways by Defendant Jeffery Everetts.

56.     In one incident, Defendant Jeffery Everetts texted Plaintiff Paula Brittain and asked her, "How does it make you feel to know that I'm naked and shaving and talking to you about your day?" (Or words to that effect.)

57.     Plaintiff Paula Brittain would sometimes go along with these statements because she was afraid of retaliation.

58.     Another instance of sexual harassment involved when Defendant Jeffery Everetts placed Plaintiff Paula Brittain's ankle bracelet on her ankle.

59.     Defendant Jeffery Everetts insisted that Plaintiff Paula Brittain place her foot in Defendant Jeffery Everetts's chair (between Jeffery Everetts's legs) to place the ankle bracelet on Plaintiff Paula Brittain's ankle.

60.     In other instances, Defendant Jeffery Everetts would instruct Plaintiff Paula Brittain to purchase dildos and other sex toys while she was on house arrest.

61.     Defendant Jeffery Everetts told Plaintiff Paula Brittain that he would give her a pass so that she could go to Cupid's to make the purchase.

62.     Defendant Jeffery Everetts told Plaintiff Paula Brittain that if she did not want to go to Cupid's, that he would go for her.

63.     On three separate occasions, Defendant Jeffery Everetts arrived unannounced at Plaintiff Paula Brittain's house.

64.     During the first visit to Plaintiff Paula Brittain's house, Defendant Jeffery Everetts was alone and searched Plaintiff Paula Brittain's house.

65.     During the second visit to Plaintiff Paula Brittain's house, Plaintiff Paula Brittain had called Defendant Jeffery Everetts because she was concerned she might not pass a drug screen.

66.     On this occasion, Defendant Jeffery Everetts sat alone with Plaintiff Paula Brittain for twenty to thirty minutes.

67.     After conducting the drug test, Defendant Jeffery Everetts then dumped Plaintiff Paula Brittain's urine out of the front door.

68.     Defendant Jeffery Everetts told Plaintiff Paula Brittain, "This one's on me.  The next one's on you." (Or words to that effect.)

69.     Defendant Jeffery Everetts then hugged Plaintiff Paula Brittain very tightly and told her that she could smoke marijuana, but not to go overboard.

70.     During the third visit to Plaintiff Paula Brittain's house, Defendant Jeffery Everetts removed the ankle bracelet.

71.     Defendant Jeffery Everetts again insisted that Plaintiff Paula Brittain place her foot in Defendant Jeffery Everetts's chair (between Jeffery Everetts's legs) to remove the ankle bracelet from Plaintiff Paula Brittain's ankle.

### *Kimberly Ward*

72.     Defendant Jeffery Everetts was assigned as a probation officer to Plaintiff Kimberly Ward.

73.     Plaintiff Kimberly Ward was also placed on house arrest for two thirty-day periods during her probation.

74.     During this time, Defendant Jeffery Everetts would show up at Plaintiff Kimberly Ward's home alone and unannounced.

75.     During one such visit, Defendant Jeffery Everetts began asking Plaintiff Kimberly Ward how she was going to pay for her ankle monitor, probation fee, fine, and household bills.

76.     Defendant Jeffery Everetts knew that Plaintiff Kimberly Ward was unemployed at the time.

77.     Defendant Jeffery Everetts then informed Plaintiff Kimberly Ward that he would work with her and pay some of her bills if she would engage in sexual favors with him.

78.     Plaintiff Kimberly Ward rebuffed this sexual advance.

79.     In retaliation, a few weeks later Defendant Jeffery Everetts then instructed Plaintiff Kimberly Ward to appear at the Beebe City Hall.

80.     Once Kimberly Ward arrived to city hall, Defendant Jeffery Everetts instructed her to go into the judge's chambers.

81.     Shortly after, the court clerk left the premises, leaving Defendant Jeffery Everetts and Plaintiff Kimberly Ward alone.

82.     Defendant Jeffery Everetts then instructed Plaintiff Kimberly Ward to go into the restroom to submit a urine sample.

83.     Defendant Jeffery Everetts then claimed that Plaintiff Kimberly Ward had failed her drug test.

84.     As a result, Plaintiff Kimberly Ward received a probation violation, which resulted in a $500 fine and 30 days of house arrest.

85.     Plaintiff Kimberly Ward was also required to attend a drug class that was taught by Defendant Jeffery Everetts's wife, Lorelei Everetts.

86.     During the classes, Defendant Jeffery Everetts would sit at the judge's bench and stare at Plaintiff Kimberly Ward.

87.     Defendant Jeffery Everetts sent text messages to Plaintiff Kimberly Ward asking her to eat out with him and telling her how pretty and good-looking she was.

88.     Plaintiff Kimberly Ward then informed her children's father, a Dustin Davis, about Defendant Jeffery Everetts's actions.

89.     Mr. Davis then contacted Defendant Jeffery Everetts and threatened to report Defendant Jeffery Everetts to authorities.

90.     Defendant Jeffery Everetts then instructed Plaintiff Kimberly Ward to go to city hall late one evening, when no one was there.

91.     Defendant Jeffery Everetts then took Plaintiff Kimberly Ward into the judge's chambers where he threatened her freedom.

92.     Defendant Jeffery Everetts instructed Plaintiff Kimberly Ward to sign a document stating that he had never sexually harassed her.

93.     Defendant Jeffery Everetts then took Plaintiff Kimberly Ward's cell phone and deleted all text messages between the two of them.

### CLAIM NUMBER 1
### VIOLATION OF SUBSTANTIVE DUE PROCESS
### 42 U.S.C. § 1983
### *(Against Separate Defendant Jeffery Everetts)*

94.     Plaintiffs incorporate by reference each allegation set forth hereinabove as if set forth word-for-word herein.

95.     Defendant Jeffery Everetts engaged in conduct that was so egregious and so outrageous that it may fairly be said to shock the contemporary conscience. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 797 (8th Cir. 1998).

### CLAIM NUMBER 2
### RESPONDEAT SUPERIOR
### 42 U.S.C. § 1983
### *(Against Separate Defendant CS Background, Inc.)*

96.    Plaintiffs incorporate by reference each allegation set forth hereinabove as if set forth word-for-word herein.

97.    Upon information and belief, at the time of the acts alleged herein, Defendant Jeffery Everetts was an owner of CS Background, Inc.

98.    Upon information and belief, at the time of the acts alleged herein, Defendant Jeffery Everetts was an officer of CS Background, Inc.

99.    Upon information and belief, at the time of the acts alleged herein, Defendant Jeffery Everetts was a supervisor of CS Background, Inc.

100.    As such, Defendant CS Background, Inc. is vicariously liable for the acts of Jeffery Everetts because CS Background, Inc.'s actions constituted supervisory encouragement, condonation, acquiescence, or gross negligence amounting to deliberate indifference.

### CLAIM NUMBER 3
### RESPONDEAT SUPERIOR
### 42 U.S.C. § 1983
### *(Against Separate Defendant The City of Beebe, Arkansas)*

101.    Plaintiffs incorporate by reference each allegation set forth hereinabove as if set forth word-for-word herein.

102.    On at least two separate occasions, The City of Beebe, Arkansas was notified of Jeffery Everetts's wrongdoing, and yet nothing was done to prevent further wrongdoing.

103.    Because of this failure to stop Defendant Jeffery Everetts's wrongdoing, Jeffery Everetts's actions became "action pursuant to official municipal policy," because his actions resulted from "the decisions of a government's lawmakers, the acts of its policymaking officials,

and practices so persistent and widespread as to practically have the force of law." *Connick v.*

*Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011).

## CLAIM NUMBER 4
## OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ARKANSAS COMMON LAW
### *(Against Separate Defendant Jeffery Everetts)*

104.    Plaintiffs incorporate by reference each allegation set forth hereinabove as if set

forth word-for-word herein.

105.    Plaintiffs have sustained damages.

106.    Defendant Jeffery Everetts wantonly engaged in extreme and outrageous conduct.

107.    Such conduct proximately caused damage to Plaintiffs in the nature of emotional

distress.

## CLAIM NUMBER 5
## ARKANSAS CIVIL RIGHTS ACT
## ARK. CODE ANN. § 16-123-101 *ET SEQ.*
### *(Against Separate Defendant Jeffery Everetts)*

108.    Plaintiffs incorporate by reference each allegation set forth hereinabove as if set

forth word-for-word herein.

109.    Jeffery Everetts, under color of statute, ordinance, regulation, custom, or usage of

this state or any of its political subdivisions subjected, or caused to be subjected, the Plaintiffs

herein, who were within the jurisdiction thereof, to the deprivation of their rights, privileges, and

immunities secured by the Arkansas Constitution.

## CLAIM NUMBER 6
## PUNITIVE DAMAGES
### *(Against Separate Defendant Jeffery Everetts)*

110.    Plaintiffs incorporate by reference each allegation set forth hereinabove as if set

forth word-for-word herein.

111.   With respect to Claims 1, 4, and 5, Jeffery Everetts knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally and probably result in injury or damage and he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

112.   With respect to Claims 1, 4, and 5, Jeffery Everetts intentionally pursued a course of conduct for the purpose of causing injury or damage.

## DEMAND FOR TRIAL BY JURY

113.   Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court:

A.     Award damages against the defendants for the breaches set forth above;

B.     Award punitive damages;

C.     Award attorney's fees and costs; and

D.     Award such other relief that this Court deems just and proper.

Respectfully submitted,
Jennifer Johnston, Paula Brittain, and
Kimberly Ward,
*Plaintiffs*

BY: _____

TAYLOR & TAYLOR LAW FIRM, P.A.
Andrew M. Taylor, Ark. Bar No. 2005147
Tasha C. Taylor, Ark. Bar No. 2005148
124 West Capitol Avenue, Suite 1500
Post Office Box 629
Little Rock, Arkansas 72203-0629
Phone:    (501) 246-8004
Fax:       (501) 246-8009
Email:    Andy@TaylorLawFirm.com
          Tasha@TaylorLawFirm.com

*Attorneys for Plaintiffs*
